# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH PELLETIER, | : | CIVIL ACTION NO. 3:16-CV-1099 |
| Petitioner | : | (Judge Munley) |
| v. | : | |
| WARDEN, FCI ALLENWOOD, | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Kenneth Pelletier ("Petitioner" or "Pelletier"), an inmate incarcerated at the Federal Correctional Institution at Allenwood, White Deer, Pennsylvania. He contends that his due process rights were violated during the course of prison disciplinary proceedings. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. BACKGROUND

The Federal Bureau of Prisons ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is

required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for a hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. Id. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. Id.

On October 28, 2014, Pelletier received incident report 2644643 charging him with a violation of Code 296 of the Prohibited Code Act, "Use of the mail for abuses other than criminal activity." (Doc. 1, p. 6). Section 11 of the report contains the following description of the incident:

> At Approx. 9:30am this writer was reviewing hobby craft mail out cards and come across two cards being sent out by Inmate Pelletier, Kenneth #07457-036. One of the cards had a letter inside. The letter stated "I ordered this card a month ago now they wont [sic] let me send it. KP my friend at work is in arts and crafts so he is allowed to mail it. Both cards are signed brian [sic]. SIS was notified of the addresses it was being mailed to and came back as inmate Cobb, Brian #58965-060. Inmate Pelletier, Kenneth #07457-036, is part of the hobby craft program and utilized those privileges to mail out cards for another inmate.

(Doc. 1, p. 6). During the UDC review, Pelletier stated "I admitted guilt to Lt. and Oberdorf." (Id.) The UDC noted that he "admitted guilt, Section 11, and all the evidence" and referred the matter to the Disciplinary Hearing Officer ("DHO") with a recommendation that a sanction of loss of visits for thirty days (due to no prior disciplinary history) be imposed. (Id.) Pelletier was advised of the "Inmate Rights at

2

Discipline Hearing" and indicated that he understood his rights. (Doc. 5-2, pp. 14, 24). He declined the assistance of a staff representative and requested no witnesses. (Id.)

At the November 6, 2014 hearing, Pelletier acknowledged that he declined the offer of staff representation and that he did not want to call any witnesses. Additionally, he presented no documentary evidence for consideration, and made no complaints of procedural error. (Doc. 5-2, p. 8). He testified that "Cobb asked me to mail out the letters for him because he couldn't due to him not having a hobby craft permit and since I have one, I mailed it out for him." (Id.)

The DHO concluded that the evidence supported a finding that Pelletier committed the violation at the Moderate Severity Level, Code 396, Use of the Mail for abuses other than criminal activity, rather than the charged violation at the High Severity Level, Code 296. (Id. at 9). In so finding, he considered the information contained in Section 11 of the incident report and "inculpatory evidence in the form of cards/addressed labels from Pelletier [which] corroborated the evidence cited in this report. The cards were addressed to Cobb's contacts as well as the letters enclosed were written by Cobb. Pelletier's address label appeared on both cards in an attempt to mail the letters/cards for Cobb." (Id.) He indicated that he believed the information provided by the staff member as they derived no known benefit by providing false information. The DHO also noted that "Upon questioning…Inmate Pelletier, #7452-036 admitted the charge. He elaborated upon his plea by stating, the report is true." (Id.) "This charge is to be supported in this case based upon the greater weight of the evidence cited in this report as well as the inmate admitting he was mailing the two cards for Cobb." (Id.)

3

In sanctioning him with a disallowance of thirteen days of good conduct time, thirty-days disciplinary segregation, six-months loss of telephone and visiting privileges, and a monetary fine of $100.00, the DHO reasoned that:

> Pelletier circumvented the mail monitoring procedures by mailing written correspondence from and on behalf of another inmate. This bypassed the inmate mail monitoring procedures and threatened the orderly running of the institution. Accordingly, Disciplinary segregation and the Disallowance of Good Conduct Time is sanctioned to punish Pelletier for his misconduct while the Loss of Privileges (Phone and Visit) and a Monetary Fine is sanctioned in an effort to deter him from future misconduct. The DHO finds the charge for code 396 to warrant the Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

(Id. at 10).

After exhausting all available administrative avenues of review, Pelletier filed the instant petition. (Doc. 1, p. 4).

## II. DISCUSSION

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Because federal inmates possess a liberty interest in good conduct time, see Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991), the loss of such time in the context of prison discipline proceedings is subject to judicial review. Review, however, is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Superintendent v. Hill, 472 U.S. 445, 45 457. (1985). Specifically, the inmate is to be

4

provided the following: 1) written notice of the claimed violation at least twenty-four hours in advance of a hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an adequate comprehension of the case; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff, 418 U.S. at 564-72.

Pelletier frames his argument as follows: "This argument does not challenge the fact finding of the guilt of petitioner, but the capricious and retaliatory manner in which the sanctions were imposed, the falsification of inmate Cobbs [sic] DHO Report and the impartial and unfair manner treatment by the DHO." (Doc. 1, p. 4). He does not allege violations of the due process requirements of Wolff, and he concedes that there is "some evidence" in the record to support the decision of the hearing examiner. Hill, 472 U.S. at 455; see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings).

With regard to his contention that the DHO was not impartial, due process requires that the disciplinary tribunal be sufficiently impartial. Meyers v. Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974); see Wolff, 418 U.S. 539 (finding disciplinary committee was sufficiently impartial so as not to violate due process). In order to insure impartiality, the DHO may not be the victim, witness, investigator or otherwise significantly involved in the incident. 28 C.F.R. § 541.8(b). The requirement of an impartial tribunal "prohibits

5

only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. Meyers involved disciplinary action being taken against members of a prisoners' committee involved in a work stoppage. During the work stoppage, an associate warden had considerable contact with the prisoners' committee. Thereafter, the same associate warden served on the disciplinary committee. The Meyers court concluded that the presence of the associate warden on the disciplinary committee denied the prisoners an impartial tribunal. 492 F.2d at 305-07. In the matter *sub judice*, the DHO did not have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge. There is simply no evidence of partiality.

Pelletier's arguments that the sanctions imposed by the DHO were arbitrary, and that the DHO's decision to expunge the incident report of Brian Cobb demonstrates that the sanctions he received were in retaliation for his inability to pay the monetary fine, have no support in the record. Significantly, Pelletier wholly admitted that he circumvented the mail monitoring procedures. Further, following a full hearing, the DHO confirmed that Pelletier had, in fact, circumvented the mail monitoring procedures and threatened the orderly running of the institution in violation of Code 396. In sanctioning him with the disallowance of thirteen days of good conduct time, thirty-days disciplinary segregation, six-months loss of telephone and visiting privileges, and a monetary fine of $100.00, the DHO explained that "[d]isciplinary segregation and the

Disallowance of Good Conduct Time is sanctioned to punish Pelletier for his misconduct while the Loss of Privileges (Phone and Visit) and a Monetary Fine is sanctioned in an effort to deter him from future misconduct." (Doc. 1, p. 10). Sanctions permitted by 28 C.F.R. § 541.3, "Available Sanctions for Moderate Severity Level Prohibited Acts," which encompasses a Code 396 violation, include the disallowance of up to fourteen days of good conduct time, three months of disciplinary segregation, a monetary fine and loss of privileges. 28 C.F.R. § 541.3. Clearly, the sanctions imposed by the DHO were neither arbitrary nor retaliatory as they were completely consistent with the severity levels of the prohibited act and within the range available to the DHO.

## III. CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus will be denied.

An appropriate order will issue.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated: January 16, 2018